UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DZIYANA LAZAREVICH EISENBAND,
individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

STARION ENERGY, INC.,
a foreign corporation,

       Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Dziyana Lazarevich Eisenband, brings this class action against Defendant, Starion Energy, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), involves Defendant's practice of indiscriminately harassing consumers nationwide with automated and prerecorded telemarketing calls.

2. Defendant is a supplier of electricity and natural gas, offering its services to consumers in deregulated energy markets. Defendant primarily operates in deregulated markets in the northeast, including Connecticut, Massachusetts, New Jersey, New York, and Pennsylvania

3. Notwithstanding, Defendant engages in mass telemarketing to consumers located throughout the United States, regardless of whether these consumers reside within Defendant's service area.

4. Such was the case here, where Defendant contacted Plaintiff, a Florida resident,

with an automated and prerecorded telemarketing message, which sought to convince Plaintiff to switch her energy supply services over to Defendant.

5. Defendant is well-aware of the restrictions imposed by the TCPA. Indeed, on its own website, Defendant requires consumers to provide express written consent to receive automated telemarketing calls when they provide their contact information.

6. But, instead of contacting just those individuals from whom it has obtained express written consent, Defendant engages in mass telemarketing to thousands of individuals nationwide, without their prior express consent and little regard for their privacy.

7. Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

9. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial

district in which it is subject to the court's personal jurisdiction, and because Defendant markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident Palm Beach County, Florida.

11. Defendant is a Delaware corporation whose principal office is located in Middlebury, Connecticut.

## THE TCPA

12. The TCPA regulates and restricts the use of automatic telephone equipment.

13. The TCPA protects consumers from unwanted calls that are made with autodialers and/or prerecorded messages.

14. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

15. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

16. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755

F.3d 1265 (11th Cir. 2014).

17. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

18. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

19. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

20. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

21. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

22. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

24. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

25. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical*

5

*Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

27. Indeed, a violation of the statutorily-protected substantive right created by the TCPA "causes 'real' harm, as opposed to harm that is 'hypothetical' or 'uncertain.'" *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 2:15-cv-793-FtM-29MRM, 2016 U.S. Dist. LEXIS 160869, *8 (M.D. Fla. Nov. 21, 2016)(citing *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 & n.3 (11th Cir. July 6, 2016)(not receiving information to which one is statutorily entitled is a "concrete" injury); *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, 2016 WL 4017196, at *4 (S.D. Fla. July 26, 2016) (plaintiff whose sales receipt showed more than last five credit-card digits alleged a concrete harm under the Fair and Accurate Credit Transactions Act (FACTA) since, "in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts," not merely a "procedural requirement for credit card-using companies to follow")).

28. Further, individuals, including Plaintiff and members of the Class, who receive calls in violation of the TCPA suffer concrete injuries including, but not limited to, nuisance, depravation of time and resources, invasion of privacy, intrusion on seclusion, trespass to chattels and/or conversion. *See Palm Beach Golf Center v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250–51 (11th Cir. 2015) (owner of facsimile machine has Article III standing to sue where he loses use of that machine); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance"); *Bagg v. Ushealth Group, Inc.*, Case No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016)("'Courts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion,' and recognize that the sending of an unsolicited fax constitutes

an invasion of privacy.")(quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006)); *Jamison v. Esurance Insurance Services, Inc.*, Case No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016)("From this, the Court concludes that an individual suffers an injury in fact from unauthorized telephone contact when it causes an incurrence of charges, a reduction in usable minutes, or occupation of the telephone line, making it unavailable for other use."); *Johnson v. Navient Solutions, Inc.*, Case No. 1:15-cv-00716-LJM-MJD, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015)("Based on the allegations in the Complaint and the TCPA's protection of Johnson's privacy rights, the Court concludes that Johnson has stated a claim for actual harm, upon which he may rely to provide standing.")(citing *Schumacher v. Credit Protection Ass'n*, Cause No. 4:13–cv–00164–SEB–DML, 2015 WL 5786139, at *5 (S.D. In. Sept. 30, 2015)("Here, [plaintiff's] TCPA-created right to privacy was invaded by repeated automated calls from CPA."); *Weisberg v. Kensington Professional and Associates, LLC*, Case No. 15-cv-08532, 2016 WL 1948785, at *3 (C.D. Cal. May 3, 2016)("The invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money — financial harm — are not speculative future injuries or injuries based on the violation of rights provided in a statute. Thus...Plaintiff does allege actual monetary damages."); *Lathrop v. Uber Technologies, Inc.*, Case No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016)("Plaintiffs allege they and members of the class 'suffered damages in the form of text message, data, and other charges to their cellular telephone plans.' Id. ¶ 116. Based on the allegations in the Second Amended Complaint, the Court concludes that Plaintiffs have sufficiently stated an injury in fact."); *Fini v. Dish Network, L.L.C.*, 955 F.Supp.2d 1288, 1296–97 (M.D. Fla. 2013) (plaintiff has standing to sue where she lost use of cellular service for which she previously had paid).

## DEFENDANT'S BUSINESS MODEL

29.     Defendant "is a competitive supplier of electricity and natural gas, offering solutions to residential and business customers in deregulated energy markets."[1]

30.     Defendant currently operates in ten deregulated markets, including Connecticut, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania.

31.     Deregulated energy markets work by "unbundling" the supply and delivery of energy to consumers.  Instead of a local utility acting in the single role of supplying and delivering energy to consumers, companies like Defendant are permitted to compete to supply energy services to consumers, while the delivery of energy remains with the local utilities.

32.     In other words, Defendant acts as a "middleman" between consumers and utility companies, promising consumers better rates for their energy supply needs.

33.     Energy deregulation was meant to foster competition and benefit consumers.

34.     Instead, companies like Defendant, seeking to maximize their own profits, rely on aggressive marketing techniques to sign-up new customers.

35.     Defendant's aggressive marketing techniques include the automated telemarketing calls at issue in this case.

36.     Defendant, in order to drum up business, engages in indiscriminate telemarketing designed to convince consumers to sign up with Defendant as the supplier of their energy services.

---

[1] http://www.starionenergy.com/; (last accessed on February 17, 2017).

## **DEFENDANT'S TCPA VIOLATIONS**

37. On December 6, 2016, Defendant made an automated call to Plaintiff's cellular telephone number ending in 6997 (the "6997 Number") and left the following prerecorded message on Plaintiff's phone:

> This is regarding your monthly power bill. Due to laws that have passed, you now have a choice to immediately reduce the electricity charges on your monthly utility bill. Please call Starion Energy with your bill handy at 780-831-6141.

38. The above referenced call originated from telephone number 732-481-1813, which is owned and operated by Defendant, and answered by a representative who announces Defendant's name upon answering.

39. The above call was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

40. Plaintiff received the subject call within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other automated and prerecorded calls to be made to individuals residing within this judicial district.

41. Plaintiff has never had any type of relationship with Defendant.

42. Plaintiff never provided her telephone number to Defendant.

43. At no point in time did Plaintiff provide Defendant with her express written consent or express consent to be contacted using an ATDS or prerecorded messages.

44. Plaintiff is the subscriber and sole user of the 6997 Number, and is financially responsible for phone service to the 6997 Number.

45. Other recipients of Defendant's spam, aggravated by the nuisance, disruption, and invasion of privacy caused by Defendant's calls, have voiced their complaints on various on-line

forums:

- Elec bill

- "This is regarding your monthly power bill. Recent laws..." I hung up.

- Elec bill

- about changing your electric service

- Selling Electric power choice in NJ. For some reason my iPhone doesn't ring and all calls (5 so far) have gone directly to voice mail.[2]

46.     In addition to the above complaints, countless other individuals have posted complaints on the Internet about autodialed and/or prerecorded calls from Defendant. A small sample of these complaints is as follows:

- Starion Energy...Did not identify themselves without a series of extended attempts to get them to identify themselves before hanging up. Despite claims to the contrary, they do not honor MA DNC list. For MA residents, you can file complaints here: http://www.mass.gov/ocabr/data-privacy-and-se ... /complaint.html

- These people call me about once a week; they refuse to take me off their list and I think they've identified themselves as more than one different energy company. I used to live in MA, so I have a 978 area code and even though I don't live their anymore, it's always some sort of call about my MA energy bill. Caller: Star(ion)? Energy

- Starion Energy has made multiple calls (added to call blocker) in violation of both the national DNC registry and my local energy provider's no-solicitation list from this number, which is not a valid number.  If Starion promises you some kind of "discount" off your gas or electric bill, would you trust them?  Would you ever do business with a company that hides behind a spoofed caller ID, and makes you pry their real name from them? Caller: Starion Energy.  Call type: Telemarketer

- I get at least 2 calls a day from this #.  When I say hello - noone responds.  Call is coming through as East Longmeadow.  I tried to call the # back from a completely different phone, sometimes it is busy and other times it picks up and there is a beep and then the

---

[2] http://mrnumber.com/1-732-481-1813; (last accessed on February 13, 2017).

10

        phone disconnects.  Very frustrating!

- File a complaint with the FCC.  I did when I kept getting calls from american diabetes.  Got calls every day.  Asked 3 times to be taken off their call list.  And they used 3 different phone numbers.  Worth a try[3]

47.      The fact that other individuals have received the same message as Plaintiff demonstrates that Defendant used prerecorded messages to harass thousands of individuals.

48.      Further, the impersonal and generic nature of Defendant's calls and prerecorded message demonstrates that Defendant utilized an ATDS in making the calls.

49.      In fact, on its website, Defendant admits that it makes "auto-dialed telemarketing calls" to consumers.[4]

50.      Upon information and belief, Defendant utilized a combination of hardware and software systems to make the calls at issue in this case.  The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

51.      Through its telemarketing calls, Defendant violated Plaintiff's substantive rights under the TCPA.

52.      Further, Defendant's unsolicited calls caused Plaintiff actual harm, including, but not limited to, invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's calls also inconvenienced Plaintiff and caused disruption to her daily life.  *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

---

[3] http://800notes.com/Phone.aspx/1-413-318-0191/2; (last accessed on February 17, 2017).

[4] *See* http://www.starionenergy.com/our-services/for-business/ and http://www.starionenergy.com/; (last accessed on February 13, 2017).

## CLASS ALLEGATIONS

### PROPOSED CLASS

53. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

54. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call or text message made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express consent.**

55. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

56. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

57. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

58. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions

of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant made non-emergency prerecorded calls to Plaintiff's and Class members' cellular telephones;
>
> (3) Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;
>
> (4) Whether Defendant's conduct was knowing and willful;
>
> (5) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (6) Whether Defendant should be enjoined from such conduct in the future.

59. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely violates the TCPA, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

60. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

61. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

62. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the

Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

31. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

32. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

33. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

34. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

35. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

36. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

37. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

38. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

39. Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its autodialed calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**WHEREFORE**, Plaintiff, Dziyana Lazarevich Eisenband, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendant from using an automatic telephone dialing system and prerecorded messages to call telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Date: February 17, 2017

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

and

**THE GIBSON LAW FIRM, P.A.**
858 Clint Moore Rd., C111, #293
Boca Raton, Florida 33496

*/s/ Albert D. Gibson*
Albert D. Gibson
Florida Bar No. 50765
Email: adg@gibsonlawfirmpa.com
Telephone: 561.501.7858
*Counsel for Plaintiff*