UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80195-CIV-MARRA

DZIYANA LAZAREVICH EISENBAND,
individually and on behalf of all
others similarly situated

    Plaintiff,

v.

STARION ENERGY, INC.,
a foreign corporation

    Defendant.
_____/

**FINAL JUDGMENT**

THIS CAUSE is before the Court upon Defendant Starion Energy, Inc.'s ("Defendant" or "Starion") Motion to Dismiss Plaintiff Dziyana Lazarevich Eisenband's First Amended Class Action Complaint for Lack of Personal Jurisdiction and Subject Matter Jurisdiction, Improper Venue, and Lack of Standing, and Motion to Strike ("Motion" or "Motion to Dismiss")(DE 15). Plaintiff filed a response (DE 22) in opposition to the Motion, and Defendant filed a reply (DE 33). The Court has considered the briefs and is otherwise fully advised in the premises. For the reasons stated below, the Court concludes that this action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, must be dismissed for lack of personal jurisdiction.

**I.    BACKGROUND**

Plaintiff Dziyana Lazarevich Eisenband is and was, at all times relevant to this action, a resident of Palm Beach County, Florida. (DE 11, Am. Compl. ¶ 16.) Defendant Starion is a Delaware corporation whose principal office is located in Middlebury, Connecticut. (*Id.* ¶ 17.)

Defendant "is a competitive supplier of electricity and natural gas, offering solutions to residential and business customers in deregulated energy markets." (*Id.* ¶ 2.) Defendant currently operates in ten deregulated markets, including Connecticut, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania. (*Id.* ¶ 3.)

In her Complaint, Plaintiff alleges that she received an automated/prerecorded telemarketing call from Defendant on her cellular telephone without Plaintiff's express prior consent in violation of 47 U.S.C. § 227(b)(1)(A), which prohibits any person from calling a cellular telephone number using an automatic telephone dialing system or prerecorded message without the recipient's prior express consent. (*Id.* ¶¶ 51, 61, 71.) Plaintiff alleges that as a result of Defendant's unwanted call, she has suffered "a. [i]nvasion of her privacy; b. [i]nconvenience; c. [u]nwanted occupation of her time and mental energy; d. [u]nwanted occupation of her cellular telephone; e. [n]uisance; f. [t]respass on her cellular telephone; and g. [a]ggravation." (*Id.* ¶ 72.)

In support of personal jurisdiction, Plaintiff alleges that her "claim arises directly from an automated/pre-recorded telemarketing call that Defendant made to this forum." (*Id.* ¶ 12.) Plaintiff alleges that "[n]otwithstanding [Defendant's] limited geographic market, Defendant engages in mass telemarketing to consumers throughout the United States, regardless of whether these consumers reside within Defendant's service area." (*Id.* ¶ 3.) Plaintiff further alleges that "[i]n structuring its telemarketing practices, Defendant knew or should have known that indiscriminately making mass automated/prerecorded calls to cell phones could cause the company to have to defend a TCPA claim in any forum where a consumer received automated calls from Defendant." (*Id.* ¶ 50; *see also id.* ¶ 13 ("Defendant's TCPA violations (1) were intentional – Defendant intentionally placed automated/pre-recorded calls to the cellular telephones of Plaintiff and members of the class; (2)

were aimed at Florida – Defendant knew or should have known, or was willfully ignorant, that its practice of indiscriminately robocalling cellular telephones would result in contacts to individuals, including Plaintiff and members of the class, who reside in Florida; and (3) caused harm that Defendant should have anticipated would be suffered in Florida – Defendant unlawfully contacted the cellular telephones of individuals residing all over the country, and, because of the mobility of cellular telephones, should have anticipated that some of those individuals reside in Florida.".)

In support of its Motion to Dismiss, and to contest Plaintiff's personal jurisdiction allegations, Defendant submitted the declaration of Robert Bassett, Defendant's Director of Compliance and Regulatory Affairs. (DE 15-2.) In his declaration, Bassett asserts that "Starion has no real estate, offices, equipment, bank accounts, investments, or employees located in the state of Florida." (*Id.* ¶ 5.) Bassett states that "Starion is not and was not at the time of the alleged events set forth in Plaintiff's Complaint, registered with the Florida Secretary of State." (*Id.* ¶ 7.) Further, "Starion provides no services or goods in Florida, and has never provided any goods or services in Florida." (*Id.* ¶ 5.)

Bassett states that Starion limits its provision of services to the markets of Connecticut, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania. (*Id.* ¶ 6.) According to Bassett, the only telephone call that Defendant made to Plaintiff was to a New Jersey telephone number. (*Id.* ¶ 13 ("Upon investigation, the phone number that Plaintiff claims received a transmission has the area code '609,' which is associated with southeastern and central New Jersey." ).) Bassett asserts that "Starion only obtains contact information for customers in jurisdictions where it is licensed, for instance in New Jersey, but would not seek contact information for Florida residents." (*Id.* ¶ 15.) In response to Plaintiff's allegation

that Defendant engages in nationwide indiscriminate marketing, Bassett proclaims that Starion does not provide services in Florida and "has no reason to solicit customers in Florida." (*Id.* ¶ 14.)

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction - Standing

Questions regarding standing implicate a court's subject-matter jurisdiction and "must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (per curiam) (citation omitted). The party invoking the court's subject-matter jurisdiction bears the burden of proving the essential elements of standing. *Id.* "For purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, a court "should not speculate concerning the existence of standing, nor should [a court] imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000).

### B.   Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so,

'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.* (quoting *Sculptchair*, 94 F.3d at 627). The Court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## III. DISCUSSION

### A. Standing

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Defendant argues that Plaintiff has not suffered a "concrete and particularized" injury sufficient to have standing to assert a claim under the TCPA based upon only a single unwanted telephone call. In support, Plaintiff relies upon *Spokeo*, where the United States Supreme Court opined that, while an injury need not be tangible to be "concrete," a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* at 1550.

In *Spokeo*, a consumer brought an action alleging that the defendant published inaccurate information about him in violation of certain requirements of the Fair Credit Reporting Act of 1970. *Id.* at 1544. The district court determined that the plaintiff had not properly pled an injury in fact, but the Court of Appeals for Ninth Circuit reversed, holding that the plaintiff's injury was sufficiently particularized to confer standing. *Id.* at 1546. On certiorari, the Supreme Court vacated

5

the appellate court's decision and remanded the case after concluding that the appellate court had failed to address the issue of concreteness. *Id.* at 1550.

The *Spokeo* Court cautioned that the mere fact that Congress sought to curb the dissemination of false information in adopting the procedures set forth in the FCRA does not automatically mean that the plaintiff has standing under Article III to assert a violation of any procedure adopted under the FCRA. *Id.* at 1549-50. Rather, instructed the Court, Article III standing requires a concrete injury even in the context of a statutory violation, and the Article III standing determination must be informed by "both history and the judgment of Congress." *Id.* at 1549.

As to historical practice, the Court emphasized that consideration should be given to the kind of harms that have traditionally been regarded as providing a basis for standing. *Id.* Rather than demanding a complete identity of harms, the Court stated that it is instructive to consider whether the intangible harm alleged by the plaintiff has "a close relationship" to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Id.*

With respect to congressional judgment, the Court recognized that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (internal quotation marks and citations omitted). As explained by the Court, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578).

In the context of the FCRA's procedural requirements, the Court was reluctant to make a blanket ruling that a mere procedural violation, without more, satisfied the standing requirement of concreteness. The *Spokeo* Court expressed concern that the dissemination of certain kinds of false information, such as an incorrect zip code, for example, while regulated by Congress under the

6

FCRA, might not pose a sufficient risk of concrete harm to the consumer to meet the concreteness requirement. *Id.* at 1550. In remanding the case, the *Spokeo* Court tasked the appellate court with determining "whether the particular procedural violations alleged in th[e] case entail a degree of risk sufficient to meet the concreteness requirement." *Id.*

*Spokeo* teaches that in determining whether a harm or risk of harm can satisfy the requirement of concreteness, district courts should consult "history and the judgment of Congress," in light of the particular statutory violation at issue and the circumstances of the case. *Id.* at 1549. Applying this standing framework outlined in *Spokeo*, this Court finds that Plaintiff has alleged a concrete and particularized injury-in-fact sufficient to confer Article III standing.

First, heeding the Supreme Court's guidance, the Court first examines the "particular . . . violations alleged" in this case. *Id.* The TCPA prohibits any person from calling a cellular telephone number using an automatic telephone dialing system or prerecorded message without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A). Plaintiff's Complaint alleges that she received an automated/prerecorded telemarketing call from Defendant on her cellular telephone without Plaintiff's express prior consent in violation of the TCPA. (DE 11, Am. Compl. ¶¶ 51, 61, 71.) Plaintiff alleges that as a result of Defendant's unwanted call in violation of the TCPA, Plaintiff has suffered "a. [i]nvasion of her privacy; b. [i]nconvenience; c. [u]nwanted occupation of her time and mental energy; d. [u]nwanted occupation of her cellular telephone; e. [n]uisance; f. [t]respass on her cellular telephone; and g. [a]ggravation." (*Id.* ¶ 72.)

With that in mind, the Court will next consider whether and to what extent the common law permitted suits premised upon similar allegations of invasion of privacy, annoyance, intrusion on seclusion, and trespass. As noted by the Court of Appeals for the Third Circuit, "[t]raditionally, a

plaintiff's 'privacy is invaded' for the purpose of an intrusion upon seclusion claim by telephone calls 'only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding.'" *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (quoting Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt. d (1977)). Nevertheless, in *Susinno*, the court of appeals concluded that a single unsolicited telephone call which resulted in a prerecorded voicemail was a sufficiently concrete harm for Article III standing purposes. *Id.* Looking at the historical practice, the court reasoned that the invasion of privacy and seclusion that results from a single unsolicited telephone call "was of the same character of previously existing 'legally cognizable injuries.'" *Id.* (quoting *Spokeo*, 136 S.Ct. at 1549).

Adopting the reasoning in *Susinno*, this Court agrees that while traditionally one unwanted telephone call might not have been an adequate harm under the common law to be legally cognizable, it bears a close relationship to the kinds of harms remedied by the torts of invasion of privacy and intrusion upon seclusion that were recognized in the common law. *See also Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states."); *Mohamed v. Off Lease Only, Inc.*, No. 15-23352-CIV, 2017 WL 1080342, at *2 (S.D. Fla. Mar. 22, 2017) ("Though the elements of these torts [of invasion of privacy, nuisance, and trespass on his cellular telephone] differ from the elements of a TCPA claim, Plaintiff's alleged injuries bear the kind of 'close relationship' to traditionally recognized and adjudicated harms stressed in *Spokeo*.").

In addition to history, this Court looks to the judgment of Congress in determining whether Plaintiff has suffered a concrete injury. As evident from the reach of 47 U.S.C. § 227(b)(1)(A),

8

Congress concluded that no particular quantum of unwanted telephone calls should be necessary to constitute a legally cognizable invasion of a person's interest in privacy and seclusion. The congressional findings in support of the TCPA cite evidence that "automated or prerecorded telephone calls are a nuisance and an invasion of privacy." PL 102–243. It is beyond peradventure to say that an unwanted telephone call is the kind of conduct that can encroach upon one's privacy and seclusion, such that "elevat[ing] [the instance of a single unwanted telephone call] to the status of [a] legally cognizable injur[y]" was a logical expansion of the common law by Congress. 136 S. Ct. at 1549 (internal citations and quotations marks omitted).

In summary, the Court concludes that Plaintiff's alleged injuries stemming from the receipt of an unwanted telephone call are sufficiently concrete for standing purposes because they are rooted in common law and Congress has elevated these particular injuries to the status of legally cognizable injuries.

### B. Personal Jurisdiction

The Eleventh Circuit has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process.[1] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Under this test, the Court must examine

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.*

---

[1] Defendant does not contest that Florida's long-arm statute has been met.

The first inquiry focuses on whether there is a "direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (citation omitted). The second inquiry assesses whether the defendant's contacts with the state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. Alternatively, the Court may apply the "effects test," which the Supreme Court articulated in *Calder v. Jones*, 465 U.S. 783 (1984). Under the "effects test," a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state. *Louis Vuitton,* 736 F.3d at 1356. This occurs when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citation and internal quotation marks omitted). Finally, the third inquiry considers "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello*, 544 F.3d at 1288).

Here, to satisfy due process, Plaintiff argues that Defendant's conduct meets the "effects test." Thus, the question before the Court is whether Defendant engaged in conduct aimed at Florida that caused harm that Defendant should have anticipated would be suffered in Florida.[2] Plaintiff contends that the "effects test" is met because Defendant engages in nationwide "indiscriminate telemarketing, doing nothing to confirm the residences of the individuals it was harassing." (DE 22,

---

[2] The Court focuses its analysis on the second and third requirements of the "effects test"; the Court assumes for purposes of this Order that Defendant's conduct was intentional and thus satisfies the first requirement of the "effects test" set forth in *Calder*.

Response at 18; *see also* DE 11, Am. Compl. ¶¶ 2-3.) The Court takes these allegations as true in making the due process determination. *See Louis Vuitton*, 736 F.3d at 1356–58. The Court's inquiry does not end with these allegations, however, because Defendant has presented the Court with Bassett's declaration. According to Bassett's declaration, Defendant provides no goods or services in Florida, has never been authorized to do business in Florida, has no physical presence in Florida, and has no reason to solicit customers in Florida. (DE 15-2 ¶¶ 5, 7.) Bassett states that Starion limits its services to the markets of Connecticut, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania, and therefore has no reason to solicit Florida customers. (*Id.* ¶¶ 6, 14.) Further, while Defendant allegedly contacted Plaintiff while she was residing in Florida, Bassett states that the phone number that Defendant called was not a Florida telephone number; rather Plaintiff's "phone number . . . has the area code '609,' which is associated with southeastern and central New Jersey." (*Id.* ¶ 13.)

Because Defendant has submitted evidence that raises a meritorious challenge to personal jurisdiction, the burden shifts to Plaintiff to submit conflicting evidence that proves jurisdiction. *See Marshall*, 557 F.3d at 1295. Plaintiff has not submitted any evidence to rebut Defendant's claims. Therefore, for the purpose of resolving Defendant's motion to dismiss, the Court credits Defendant's statements over Plaintiff's allegations in the Amended Complaint to the extent they are inconsistent.

Based upon the statements in Bassett's declarations, coupled with the unchallenged allegations of the Amended Complaint, the Court concludes that Defendant's telephone call to a New Jersey telephone number does not establish purposeful availment with respect to this forum. The evidence shows that Defendant made a call directed to a cellular telephone number bearing a New Jersey area code, not one bearing a Florida area code, and there is no indication in the record that

11

Plaintiff informed Defendant that he was located in Florida. Because Defendant did not aim its marketing efforts in question at this state, the Court concludes that Defendant's conduct does not meet the second requirement of the "effects test." Further, it was not reasonable to anticipate that harm from a TCPA violation arising from a call to a New Jersey phone number would be suffered in Florida in particular. Therefore, since Defendant did not aim its conduct to Florida and did not have reason to know that the harm resulting from its phone call would be suffered in Florida, the Court concludes that Defendant's conduct does not meet the second or the third requirements of the "effects test."

This Court's conclusion is consistent with the conclusions of several other courts that have similarly found a lack of personal jurisdiction in cases involving alleged TCPA violations based upon calls made to a plaintiff's out-of-forum cellular telephone number. *See Hastings v. Triumph Prop. Mgmt. Corp.*, No. 15CV312-LAB (RBB), 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015) (finding that plaintiff had not met burden of establishing personal jurisdiction in TCPA action, reasoning that "[t]here is no reason to believe Triumph knew Plaintiffs were California residents, or even that Triumph should have known this . . . [since] [t]he only known information Triumph had about them — their phone number — identified them as possible Arizona residents, not California residents"); *Cunningham v. Carribean Cruise Line, Inc*., No. 3:14-CV-01040, 2015 WL 475271, at *6 (M.D. Tenn. Feb. 4, 2015), (finding that the federal court located in Tennessee lacked personal jurisdiction over plaintiff in TCPA action based upon "calls allegedly placed by Defendant from Florida to his North Carolina cell phone, which he received in Tennessee"), *report and recommendation adopted sub nom*., No. CIV. 3:14-1040, 2015 WL 1275435 (M.D. Tenn. Mar. 19, 2015), *order vacated in part on reconsideration sub nom. on other grounds*, No. 3:14-CV-01040,

2015 WL 13657147 (M.D. Tenn. May 7, 2015); *Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013) ("[T]here is no evidence, let alone a preponderance of the evidence, from which this Court can conclude that either of the Defendants 'expressly aimed their conduct at Pennsylvania,' as is required to establish specific personal jurisdiction. Defendants utilized an 'automatic telephone dialing system' ('ATDS') to call Plaintiff, Plaintiff's cellular telephone number bears a Florida area code, not one registered to Pennsylvania, and at no time did Plaintiff inform Defendants that he was located in Pennsylvania. Accordingly, we lack specific personal jurisdiction to adjudicate Plaintiff's federal law claim and Defendant's Fed. R. Civ. P. 12(b)(2) motion to dismiss the TCPA claim must be granted." (internal citation omitted)).

None of the cases cited by Plaintiff are sufficiently analogous to this case to persuade this Court to part company with the majority view. In *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1370 (S.D. Fla. Aug. 10, 2016), this Court determined that it had personal jurisdiction over certain Pizza Hut franchise restaurants who sent text messages to Florida telephone numbers through their agents. This Court found that because the defendants provided the Florida phone numbers to their marketing agents as part of a national marketing campaign, the defendants' conduct was aimed at Florida. *Id.* Moreover, this Court found that "it [wa]s reasonable to anticipate that harm from a TCPA violation arising from a call or text message to a Florida phone number would be suffered in Florida. Indeed, multiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the effects test for a court of that state to exercise personal jurisdiction over the defendant." *Id.* (citations omitted).

Unlike the case in *Keim*, where the court found personal jurisdiction because the defendants sent texts to a plaintiff's Florida telephone number, Defendant here made a call to Plaintiff's New

Jersey telephone number. Thus, the facts in *Keim* cannot be reasonably analogized to the facts here. Plaintiff suggests that this Court in *Keim* entertained the possibility that jurisdiction would be proper where a company indiscriminately contacts the cellular telephones of individuals around the country. (DE 22, Response at 3 (citing *Keim*, 199 F. Supp. 3d at 1370-71). In actuality, in *Keim*, the Court only noted that the defendants had raised the hypothetical of a plaintiff with a Florida telephone number receiving a text message in another state and then attempting to establish personal jurisdiction in that other state, but the Court stated that it "expresses no opinion on whether jurisdiction would be proper in the . . . hypothetical." 199 F. Supp. 3d at 1371.

Plaintiff also cites to *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014), in support of her personal jurisdiction argument. In *Luna*, the defendant sent text messages to cell phones with California area codes, among others. *Id.* The text messages were disseminated from a database of customers who had first made contact with the defendant in Nevada. *Id.* at *2. Since the defendant sent the messages directly to cell phones with California area codes, including the plaintiff's cell phone, the court held that the defendant "expressly aimed its conduct at California." *Id.* at *3. Likewise, the court found that the defendant knew that the alleged harm caused by the text messages it sent to California cell phones was likely to be suffered in California. *Id.* As a result, the court held that the "effects test" had been satisfied, and the plaintiff had met the burden of demonstrating that the defendant purposefully directed its activity at the forum state. *Id.* In concluding that the "effects test" was satisfied, the *Luna* court rejected the defendant's argument that the defendant could not have known that the plaintiff would suffer harm in California because an area code is not necessarily indicative of a user's residence. *Id.* at *4.

As an initial matter, the California district court's finding of personal jurisdiction in *Luna*,

14

which was based upon the defendant's text messaging to a California telephone number, does not support a finding of personal jurisdiction in the case at bar, since Defendant in this case did not make a phone call to a Florida telephone number. As suggested in *Luna*, area codes provide some indication, to the caller, of a telephone owner's possible residency. Ergo, when Defendant dialed a telephone number having a New Jersey area code, it is fair to say that Defendant was aiming its conduct at New Jersey (not Florida) and had reason to anticipate that any harm would befall in New Jersey (not Florida). This Court cannot accept Plaintiff's contrary and rather presumptuous position that because cellular phones travels with their owners and people in society today are mobile, Defendant was aiming its conduct at, and anticipated harm in, every state in the country, including this state, when it made a single telephone call to a New Jersey telephone number.

Finally, Plaintiff relies upon the case of *Woods v. Santander Consumer USA, Inc.*, No. 2:14-CV-02104-MHH, 2016 WL 3124618, at *4 (N.D. Ala. June 3, 2016), where the court there found that it had personal jurisdiction over the defendant with respect to the Tennessee plaintiffs' TCPA claims. The defendant, which acquired and/or serviced consumer loans in all 50 states, made calls to the plaintiffs' Tennessee cell phone numbers. *Id.* Nevertheless, in finding personal jurisdiction, the court reasoned that "because there are no geographical boundaries on Santander's automated cell phone collection efforts," the defendant should have known that making calls to cell phones of borrowers in 50 states could cause the company to have to defend a TCPA claim in any forum where a consumer received a call. *Id.* On reconsideration, the court again reiterated that "[b]ecause of the mobile nature of cell phones, Santander cannot predict where a borrower will be located when he or she receives a call from Santander on his or her cell phone. Thus, each time Santander calls a borrower's cell phone, the company knows or reasonably should know that it may

15

have to litigate a TCPA claim in any state as a result of that call." *Williams v. Santander Consumer USA, Inc.*, No. 2:15-CV-919-MHH, 2017 WL 492968, at *2 (N.D. Ala. Feb. 7, 2017).

This case is factually distinguishable from *Woods* because Defendant here does not operate its business on a nationwide basis. Rather, Defendant's business operations are limited to the following states: Connecticut, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania. In any event, this Court finds persuasive the legal conclusions and reasoning in *Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013). As in *Michaels*, "there is no evidence, let alone a preponderance of the evidence, from which this Court can conclude that . . . Defendant[] 'expressly aimed [its] conduct at [Florida],' as is required to establish specific personal jurisdiction. Defendant[] utilized an 'automatic telephone dialing system' ('ATDS') to call Plaintiff, Plaintiff's cellular telephone number bears a [New Jersey] area code, not one registered to [Florida], and at no time did Plaintiff inform Defendant[] that [s]he was located in [Florida]." *Id.*

As a final argument, Plaintiff suggests that Defendant's receipt of complaints from recipients outside Defendant's service area placed Defendant on notice that its telemarketing activities were impacting residents outside of its service area. Again, however, the fact remains that Defendant never aimed its tortious conduct at Florida, as required to meet the "effects test." In addition, neither the general mobility of cell phones nor Defendant's receipt of complaints from callers outside its service area placed Defendant on sufficient notice that harm from making a telephone call to a New Jersey phone number would be suffered in this particular state. Defendant's "contacts" with Florida are better characterized as "random, fortuitous, or attenuated contacts," not contacts establishing purposeful availment as required under the "effects test." *Walden v. Fiore*, 134 S. Ct. 1115, 1123

(2014). Consequently, and for all of the above-stated reasons, this Court lacks personal jurisdiction to adjudicate Plaintiff's TCPA claims.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that it lacks personal jurisdiction over Defendant and therefore Defendant's motion to dismiss the TCPA action must be granted. Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Starion Energy, Inc.sMotion to Dismiss the First Amended Class Action Complaint (DE 15) is **GRANTED**. The claims in the First Amended Complaint (DE 11) are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

The Clerk shall **CLOSE** this case. Any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of May, 2018.

_____
KENNETH A. MARRA
United States District Judge